THE NACOOCHEE, etc.

*(District Court, S. D. New York. January 22, 1885.)*

1. COLLISION—STEAMER AND SAILING VESSEL.

A collision between a steam-vessel and a sailing vessel in a fog cannot be justified on the plea of inevitable accident, unless it appears that both parties have endeavored by all means in their power, with due care and a proper display of nautical skill, to prevent the collision.

2. SAME—DUTY OF STEAMER.

A steamer is bound to make all available use of her helm, ot her engines in backing, and of an alert lookout, and a moderate speed, in a fog, to avoid collision, together with special care, when known to be in the vicinity of the sailing vessel's course.

3. SAME—DUTY OF SAILING VESSEL.

A sailing vessel is also bound, under rule 24, to change her course if she is in immediate danger and can thereby avoid collision, and is in fault for not doing so when she has sufficient time and opportunity after the course of the steamer is clearly fixed and visible.

4. SAME—CASE STATED.

The steamer N., off Cape May, upon a course N. ½ E., in a fog, at about 1:30 P.M., passed the schooner L. T., sailing N. N. E., about 300 yards eastward of her. Each was seen from the other, and their horn and whistle were heard.

Half an hour afterwards the steamer, hearing cries of distress abeam, put about until she headed S. S. E., and shortly after heard the horn of the schooner, and at about the same time saw her sails about 300 yards distant, a little on her own starboard bow. She had been going half-speed all the time, making from 6 to 7 knots. She immediately reversed her engines. The schooner was struck on her port quarter, about 10 feet from the taffrail, and sunk a few moments afterwards. The steamer's lookout was not produced. He did not report the schooner at all, and the steamer's helm was not changed. *Held*, that the steamer was liable for not observing specially the precautions required by the known proximity of the schooner, for excess of speed, for want of proof of an alert lookout, and for not making any use of her helm to avoid the collision.

5. SAME—MUTUAL FAULT—DAMAGES DIVIDED.

It appearing that on the schooner there were 14 men below, including the officer in charge of the watch, and only two men on deck, viz., one at the wheel, and one forward doing double duty as lookout and blowing the horn, *held*, to be short-handed and negligent navigation in a fog. And it being clearly perceptible to those on the schooner, had the captain been on deck, that the steamer was going astern and not ahead, in time to have enabled the schooner by porting to have avoided the collision, *held*, that the schooner was also in fault for not porting, and the damages were divided.

In Admiralty.

*S. Newell* and *A. B. Swazey*, for libelants.

*John E. Ward* and *Wm. Wheeler*, for claimants.

BROWN, J. The libelants are the owners, officers, and crew of the fishing schooner Lizzie Thompson, which, on the sixteenth of April, 1883, was returning from the south with a full fare of fish. At about 2 o'clock of that day, it being clear overhead, but a thick fog below, as the schooner was sailing at about the rate of four knots upon a course N. N. E., with the wind S. S. E., she was run into by the steamer Nacoochee, which struck her aft of the main chains, on the port quarter, about 10 feet from the taffrail, causing her to sink a few minutes afterwards. The steamer Nacoochee is a propeller of about 3,000 tons burden, and about 300 feet long. She was bound from Savannah to New York. At about 1:30 P. M. she was upon her usual course of N. ½ E., off Cape May, about 10 miles to the S. E. of the Five Fathom light-ship, and going at "half-speed," under one bell, when she overhauled the schooner, and passed to the eastward of her at a distance of two or three hundred yards. The fog-horn of the schooner was heard upon the steamer, and the steamer's whistle was heard upon the schooner. At about 2 o'clock, the steamer having up to that time kept her previous course of N. ½ E., repeated cries of distress were thought to be heard by the captain, and others on board the steamer, on their starboard beam. After some conference with respect to these cries, and several persons agreeing as to their apparent character, the steamer's helm was put hard to port, and she swung round until she reached a course of S. S. E., when her helm was steadied; and about that time, or very shortly afterwards, the schooner's fog-horn was heard, and her sails, almost at the same time, appeared through the fog a little on the steamer's starboard bow, apparently two or three hundred yards distant. Orders were immediately given by the captain to stop and reverse at full speed, and these orders were obeyed. No

change was made in the steamer's helm, and the schooner kept her course. The steamer's forward motion was nearly stopped at the time of the collision, but not enough to prevent her penetrating two or three feet into the schooner, and sinking her, as above stated. In swinging about the steamer changed her course about 12 points. The evidence showed that, going full speed, under a hard a-port helm, she would complete a circle of about half a mile diameter. At half-speed such a circle would be somewhat larger. She would make this change of 12 points, therefore, at half-speed in some 5 or 6 minutes. This does not vary much from the general estimate of the steamer's witnesses that the cries were first heard about 15 minutes before the collision.

As there was nothing extraordinary in the circumstances under which this collision occurred, the wind being moderate, the sea calm, and nothing but fog to embarrass the navigation of the steamer, she must be held in fault, unless she satisfies the court by clear proof that she did all that was reasonably possible on her part to avoid the collision, or clearly shows the collision to have been the sole fault of the schooner. The plea of inevitable accident cannot be sustained, say the supreme court in the case of *The Clarita*, 23 Wall. 1, 13, "unless it appears that both parties have endeavored, by all means, in their power, with due care and a proper display of nautical skill, to prevent the collision." *Union Steam-ship Co.* v. *New York & Va. S. S. Co.* 24 How. 307; *Sampson* v. *U. S.* 12 Ct. Cl. 480; *The Colorado*, 91 U. S. 692; *Maclaren* v. *Compagnie Francaise, etc.*, L. R. 9 App. Cas. 640, 647. In my judgment the steamer in this case does not satisfactorily clear herself of fault.

1. Her speed, as I feel bound to hold, was in excess of the "moderate speed," which, under rule 21, the circumstances required. There is some general evidence on her part that this speed was less than six knots, and that it was as little as would keep steerage-way upon her. I am not satisfied as to the exactness of this testimony. She was going under a single bell at "half-speed," with 30 revolutions of her wheel per minute; 62 revolutions would give her an average speed of about 14 knots. I think she was probably going not much less than 7 knots, which her propeller indicated; and, even if her speed was but 6 knots, she has not satisfactorily proved that this speed was necessary to keep her under control in a calm sea and a moderate wind. Mere general testimony that half speed is necessary to keep steerage-way is insufficient. This plea is frequently made; but it is not admitted to clear the vessel in the absence of more specific proof. If, at the speed she was running, she was not able to avoid running down a sailing vessel, visible 300 yards off, the speed was not "moderate," within the meaning of rule 21. *The Pennsylvania*, 19 Wall. 125; *The Eleanora*, 17 Blatchf. 88; *Leonard* v. *Whitwill*, 10 Ben. 647.

2. There is reason to believe that there was a failure of the lookout on the steamer to perform his duties. It is said that there was

a man on duty forward as lookout; but it does not appear that the schooner was reported by him at all. He had disappeared when the libel was filed one month afterwards, and has not been found; and his name, even, has not been discovered. If the fog was as dense as represented, the lookout ought to have been doubled. *The Colorado*, 91 U. S. 692, 698. Considering that the steamer was nearly stopped at the time of the collision, it may be reasonably inferred that, had the schooner been reported as soon as she could have been seen by an alert lookout forward, the steamer would have been stopped in time to avert the collision.

3. The steamer had cause for special caution in reference to this schooner. Only about half an hour previous the steamer had passed her and hauled to the westward; and when the steamer nearly doubled upon her course so as to go S. S. E., it was evident that she would again cross the schooner's track, and that the schooner could not be far from her. This knowledge of the schooner's proximity, and that her track would be crossed very soon, bound the steamer to special precautions to avoid her; but no special precautions were observed.

4. I am not satisfied in another respect, namely, that the steamer, upon reversing her engine, did not change her helm at all. She was still moving forward through the water, and at first was going at the rate of at least six knots; and, though a change of helm on a propeller, when the screw is backing, has much less effect than on a side-wheel steamer when backing while the ship is still moving ahead, it has never been proved before me in any case, and was not proved in this case, that a change of helm would have had no effect whatever, so long as the vessel had forward motion. The steamer struck the schooner about 10 feet only from the taffrail. A very slight change of the steamer's course to starboard would have avoided the schooner altogether. She was bound, therefore, to change her helm, in order to obtain whatever help that change might have given her. I cannot resist the conviction that by so doing this collision would have been averted.

On these grounds I must hold that the steamer has not cleared herself from responsibility by showing that she did all that was reasonably within her power "to keep out of the way," as rule 20 requires. I cannot, however, exempt the schooner from blame. There were 16 men aboard. All except two were below, including the captain and mate. There was but one man forward, who was charged with the double duties of a lookout and of blowing the horn; and but one man astern, a youth of 20 only, at the wheel. This was too short-handed, and was clearly negligent navigation in a fog. *The Eleanora*, 17 Blatchf. 103. The captain came on deck only when he heard the cry, "A steamer is coming into us!" When he got on deck, the steamer must have been near, for he says he saw no chance then to avoid a collision; yet the steamer must have been first visible from

a minute to a minute and a half before the collision. He says he told the wheels-man to keep her course; but during the half minute before the collision it was clear that the steamer could not be going ahead of the schooner. The captain of the steamer called out "to luff." The call was not heard. Had he ported, however, the schooner being small, of but 73 tons register, easily handled, and luffing quickly, I cannot doubt she would have gone clear. Had the captain or the mate, whoever was in charge of the watch, been upon deck at the post of duty when the steamer was first discovered or discoverable, some 300 yards distant, he would have had time to observe her course, and to perceive that she was going astern, and that by porting he could avoid her. Though rule 23, in general, requires a sailing vessel "to keep her course," it does not apply so as to justify running into another vessel when a change of helm will avoid her, and when there is clearly reasonable time and opportunity to do so. In that case, rule 24 requires a departure from rule 23 in order to avoid immediate danger. Section 4233; *The Anglo-Indian*, 2 Mar. Law Cas. 239; 1 Maude & P. Shipp. 604; *The Florence P. Hall*, 14 FED. REP. 408, 415; *The Negaunee*, 20 FED. REP. 918; *The C. C. Vanderbilt*, 1 Abb. Adm. 361; *The New Champion*, Id. 202.

These faults of the schooner I must consider, therefore, as directly contributing to this collision; and for this reason the schooner must also be held to blame, and entitled to receive but half her damages, with costs. An order of reference may be taken to ascertain the amount.